United States District Court
Southern District of Texas
**ENTERED**
November 10, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MONTALBO, | § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:20-CV-00038 |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Plaintiff Christopher Montalbo ("Montalbo") seeks judicial review of an administrative decision denying his application for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* 42 U.S.C. § 405(g). Before me are competing motions for summary judgment filed by Montalbo and Defendant Andrew Saul, the Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 10, 12.

Having considered the motions, responsive briefing, record, and applicable law, I **RECOMMEND** that Montalbo's Motion for Summary Judgment (Dkt. 10) be **GRANTED** and the Commissioner's Motion for Summary Judgment (Dkt. 12) be **DENIED**.

## **BACKGROUND**

In July 2015, Montalbo filed an application for disability insurance benefits under Title II of the Act, alleging disability as of February 28, 2010. Montalbo's application was initially denied and denied again upon reconsideration. Subsequently, an ALJ held two hearings and

found Montalbo was not disabled. Montalbo filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review. This appeal followed.

## APPLICABLE LAW

Section 405(g) of the Act governs the standard of review in disability cases. *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (internal quotation marks and citations omitted). The result is a judicial review limited to the reasons relied on as stated in the ALJ's decision where *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

2

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4 the Commissioner considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id*.

## THE ALJ'S DECISION

The ALJ found at step one that Montalbo "did not engage in substantial gainful activity during the period from his alleged onset date of February 28, 2010 through his date last insured of December 31, 2015." Dkt. 6-3 at 15.

The ALJ found at step two that Montalbo had the following severe impairments: "cervical spine and lumbar spine degenerative disc disease, diabetes mellitus, and hypertension." *Id.*

At step three, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of step four, the ALJ assessed Montalbo's RFC, as follows:

3

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). He can never climb ladders, ropes, and scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant must be able to alternate between sitting and standing at will, and he can sit for no more than 4 hours in an 8-hour workday, and stand/walk for the remainder of the day. He can stand for about one hour at a time, walk for one hour at a time, and sit for three hours with a five minute change of position.

*Id.* at 16.

At step four, the ALJ determined that Montalbo's RFC would not allow him to perform any of his past relevant work.

At step five, with the assistance of a vocational expert, the ALJ concluded that "considering [Montalbo's] age, education, work experience, and residual functional capacity, [he] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." *Id.* at 31. Accordingly, the ALJ determined that Montalbo was not disabled and thus not entitled to benefits.

## DISCUSSION

In this appeal, Montalbo asserts two arguments. First, he contends that the ALJ did not properly evaluate the medical opinions of several treating physicians. Second, Montalbo asserts that the ALJ's step five determination is not supported by substantial evidence because the vocational expert's testimony was based on a flawed hypothetical question that excluded

4

limitations contained in the RFC.  Because I ultimately find that Montalbo's second argument warrants remand, I do not reach his first argument.[1]

Montalbo contends that the ALJ's hypothetical to the vocational expert is flawed because it did not include these specific limitations, which were included in his RFC: (1) "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl"; (2) "alternate between sitting and standing at will"; or (3) "can stand for about one hour at a time, walk for one hour at a time, and sit for three hours with a five minute change of position." *Id.* at 16. The Commissioner rejects each contention, arguing that the "hypothetical question presented to the [vocational expert] encompassed the limitations provided in the ALJ's RFC finding." Dkt. 12-1 at 16.  I will first set forth the relevant legal principles. Then, I will address each contention in turn.

The ALJ has a duty to fully and fairly develop the record.  *See Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).  If an ALJ relies on a vocational expert's testimony elicited by a defective hypothetical question, the ALJ does not meet his burden to show that a plaintiff could perform available work.  *See Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (vacating the ALJ's decision as unsupported by substantial evidence because the ALJ relied on a hypothetical question that did not accurately reflect the plaintiff's mental impairment).  As explained by the Fifth Circuit:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant *recognized by the ALJ*, and the claimant or his representative is afforded the opportunity to

---

[1] Although I do not reach Montalbo's first argument, I urge the ALJ on remand to ensure that he strictly complies with the so-called treating physician rule, which was still applicable when Montalbo applied for disability benefits.

> correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand.

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (emphasis added). Moreover, "failure to point out the problems in a defective hypothetical [does not] automatically salvage[] that hypothetical as a proper basis for a determination of non-disability." *Boyd*, 239 F.3d at 707. "Since posing the incorrect hypothetical is reversible error, Plaintiff need not demonstrate prejudice." *Orosco v. Comm'r of Soc. Sec. Admin.*, 171 F. Supp. 3d 539, 544 (E.D. Tex. 2016).

Because Montalbo contends that the ALJ posed a flawed hypothetical to the vocational expert, I begin with the hypothetical. In pertinent part, the ALJ asked the vocational expert:

> Q All right, so then we're looking at light, unskilled with no ropes, ladders and scaffolds, all the posturals occasional and a sit/stand, okay? And a sit/stand is going to be, you know, you -- you get to -- you get to -- if you're doing light work stand for six hours and -- and sit for two. But what I'm saying is he can only sit for a total of four hours and then he has to stand or walk for the rest, okay?

Dkt. 6-4 at 44. This hypothetical, on its face, does not explicitly include any of the limitations that Montalbo has identified. The Commissioner seems to recognize this fact but argues that any difference is merely a matter of phrasing, as opposed to substance. I disagree.

6

### 1. "Posturals" Does not Include Climbing.

The Commissioner contends that the phrase "all the posturals occasional,"[2] which the ALJ used in the hypothetical, is synonymous with the RFC limitation "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl."[3]  The Commissioner has not directed me to any authority supporting this contention.  Arguably, the term "posturals" may include "balance, stoop, kneel, crouch, and crawl." *See, e.g.*, *Nichols v. Saul*, No. H-18-2278, 2019 WL 3325716, at *5 (S.D. Tex. July 5, 2019) (explaining that "unable to perform any postural" means "bending, crouching, stooping, or crawling").  However, in the absence of supporting authority, I'm not inclined to stretch that term to include climbing ramps and stairs.

### 2. The ALJ's Hypothetical Failed to Include Sit and Stand Limitations.

The Commissioner attempts to address Montalbo's two remaining contentions together, basically arguing that although the sit and stand limitations Montalbo identifies were not relayed in the ALJ's hypothetical, certain language in the hypothetical can be interpreted to subsume the missing sit and stand limitations.  While creative, I'm unwilling to go down that rabbit hole because it would require me to speculate about what the ALJ meant, as well as what the vocational expert understood.  The law is very clear that I "may not accept explanations not offered in the ALJ's opinion." *Smith v. Colvin*, No. 1:14CV195-SA-DAS, 2016 WL 762693, at *9 (N.D. Miss. Feb. 25, 2016).  The Commissioner's response is an invitation to do just that.  I decline.

---

[2] Dkt. 6-4 at 44.

[3] Dkt. 6-3 at 16.

Consequently, this case must be remanded. *See Ellis v. Astrue*, No. 7:09-CV-70-O, 2010 WL 3422872, at *6 (N.D. Tex. July 27, 2010) ("In this case, the ALJ relied on [vocational expert] testimony given in response to a hypothetical question that included [an] RFC different from the RFC the ALJ recognized in his decision. Plaintiff could not have known at the hearing that the ALJ's findings as to Plaintiff's RFC would differ . . . from those in the hypothetical question and that the ALJ would rely on the defective hypothetical question. The Court therefore finds that the ALJ's hypothetical question did not reasonably incorporate all the limitations recognized by the ALJ, rendering the question defective.").

## CONCLUSION

For the reasons stated above, I recommend that Montalbo's Motion for Summary Judgment (Dkt. 10) be **GRANTED**; Defendant's Motion for Summary Judgment (Dkt. 12) be **DENIED**; and the decision of the ALJ be **REVERSED** and **REMANDED** for reconsideration in accordance with this opinion and applicable law.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this \_\_10TH\_\_ day of November 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE